**IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE NASHVILLE DIVISION**

| | | |
|---|---|---|
| **JUAN IBARRA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:05-0971** |
| | ) | **Judge Trauger** |
| **KENNETH BARRETT,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Pending before the court is the Motion for Attorney's Fees, Costs and Expenses and Pre- and Post-Judgment Interest filed by the plaintiff (Docket No. 107), to which the defendant has responded (Docket No. 110), and the plaintiff has replied (Docket No. 116). For the reasons discussed herein, the plaintiff's motion will be granted in part and denied in part, and the plaintiff will be awarded $127,503 in attorney's fees and $2,956.95 in costs.

## BACKGROUND

The plaintiff, Juan Ibarra, brought this lawsuit alleging a variety of civil rights claims, including claims under the Fourth and Fourteenth Amendments to the United States Constitution, and several tort claims arising under Tennessee state law. In a Memorandum and accompanying Order, both dated April 19, 2007, this court granted summary judgment for the defendants on all of Ibarra's claims except for his Fourth Amendment claim against Kenneth Barrett.[1] That claim proceeded to a jury trial in October 2007. The jury rendered a verdict for

[1]Barrett was one of several defendants initially named in the Complaint.

Ibarra on his Fourth Amendment claim. In response to a special verdict form, the jury ruled for Ibarra on nearly every factual question presented. The jury awarded Ibarra nominal damages, but did not, however, award Ibarra compensatory or punitive damages.

## ANALYSIS

The plaintiff now seeks attorney's fees and costs associated with his lawsuit. The defendant has opposed this motion.

### I. Attorney's Fees

Courts have discretion to award a "reasonable attorney's fee as part of the costs" to the prevailing party in a federal civil rights action. 42 U.S.C. § 1988. The purpose of Section 1988 is to ensure access to the judicial system to individuals who have suffered civil rights violations. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). The initial step in determining a reasonable attorney's fee is to multiply a reasonable hourly rate by a reasonable number of hours expended on the case, sometimes referred to as a "lodestar." *Id.* at 433 (1983); *see also Blum v. Stenson*, 465 U.S. 886, 888 (1984); *Wayne v. Village of Sebring*, 36 F.3d 517, 531 (6th Cir. 1994). Upward or downward adjustments to this product may then be applied if necessary to arrive at a reasonable fee.[2] *Hensley*, 461 U.S. at 434.

[2]In the widely-cited case *Johnson v. Georgia Highway Express, Inc.*, the Fifth Circuit articulated twelve factors that are useful in determining whether a fee award is reasonable. 488 F.2d 714 (5th Cir. 1974). Those factors include (1) the time and labor required by the case, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to work on the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Id.* at 717-19; *see also Reed v. Rhodes*, 179 F.3d 453, 471-72 (6th Cir. 1999) (citing *Johnson* and enumerating factors).

*A. Lodestar Calculation*

The plaintiff seeks attorney's fees in the amount of $141,670 for the work of three attorneys on his case.[3] The defendant challenges the reasonableness of both the hourly rate sought by the plaintiff on behalf of his attorneys and the number of hours billed by his attorneys.

In support of the plaintiff's motion, each of the three attorneys who represented him submitted an affidavit detailing his education, experience, and hourly rate, as well as detailed records of time spent working on his case. (Docket No. 107 Exs. 1-3.) Additionally, the plaintiff submitted an affidavit and a declaration from two attorneys, who did not represent him, but who are familiar with the market for civil rights attorneys in the Nashville area. (Docket No. 107 Exs. 4-5.) Both of these attorneys, who are well-known by the court, attested that the market rate for representation such as that provided by Messrs. Higgins, Merrell, and Street in this case is $200-$300 per hour. The defendant argues, however, that the $275 per hour rate sought by the plaintiff for Mr. Higgins and Mr. Merrell and the $250 per hour rate sought for Mr. Street are excessive.

The key factor in determining whether the rate sought is reasonable is the market rate for such representation. *Blum*, 465 U.S. at 895 ("The statute and legislative history establish that 'reasonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant community."); *see also Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 242, 250 (6th Cir. 2000). The defendant cites no support for his contention that a reasonable rate must be

[3]Attorney James Higgins asserts that he spent 110.3 hours working on the case at a rate of $275 per hour, attorney Jonathan Street asserts he spent 421.7 hours working on the case at a rate of $250 per hour, and attorney William Merrell asserts he spent 21.5 hours working on the case at a rate of $275 per hour.

determined by reference to the rate that the plaintiff's attorneys receive from clients (Docket No. 110 at 16). To the extent that the plaintiff's attorneys are engaged in a civil rights practice, it may well be that many of their clients do not have the means to pay a market rate for their work, and that the attorneys rely on Section 1988 and similar statutes for a bulk of their fees. To limit this analysis by considering only the rate the plaintiff's attorneys charge clients directly is both an inaccurate representation of the market value of their services and inconsistent with the purpose of Section 1988.

Additionally, there is no reason that the rate paid to the plaintiff's attorneys must necessarily be limited by the rate paid to the defendant's attorneys in this case, as the defendant asserts (Docket No. 110 at 16).[4] Here, the plaintiff has produced evidence that the rate he seeks on behalf of his attorneys is consistent with the market rate. The rate sought likewise is consistent with fee awards to other Nashville-based attorneys in other civil rights cases before courts in this district. *See Randolph v. Schubert*, No. 2:06-0050, 2:06-0058, 2007 U.S. Dist. LEXIS 55020, at *9 (M.D. Tenn. July 27, 2007) (Echols, J.) (finding that rates of $200 and $275 per hour were reasonable). Thus, the plaintiff has carried the burden of establishing that the requested rates of $250-$275 per hour are reasonable, regardless of the fact that these rates may be higher than the $135-$150 per hour charged by the defendant's attorneys in this case.[5]

---

[4]As is the custom here and elsewhere, defense attorneys practicing in this field charge lower rates because of the steady volume of work that they can depend upon from the client.

[5]The defendant also challenges the rate requested for Mr. Street's work specifically, arguing that Mr. Street has substantially less experience than do Messrs. Higgins and Merrell, and that his rate should reflect that fact. However, the requested rates—$250 per hour for Mr. Street as compared to $275 per hour each for Messrs. Higgins and Merrell—do reflect a difference in the respective experience of the three attorneys.

In addition to challenging the reasonableness of the rate sought by the plaintiff on behalf of his attorneys, the defendant asserts several challenges to the reasonableness of the number of hours billed. First, the defendant challenges time entries made by Mr. Merrell for what the defendant characterizes as "translation services." (Docket No. 110 at 17.) Indeed, Mr. Merrell billed for time spent drafting a number of letters in Spanish. (Docket No. 107 Ex. 3.) However, there is no indication that these letters were previously drafted by other attorneys—that is, neither Mr. Higgins nor Mr. Street billed time for drafting letters immediately prior to Mr. Merrell's Spanish-language time entries. As there is no evidence that this work is duplicative of work performed by other attorneys, it is presumed that Mr. Merrell himself drafted these letters, albeit in Spanish. The mere fact that Mr. Merrell's work in this regard drew on his language skills in addition to his skills as an attorney does not render his services mere "translation" as opposed to legal work, as the defendant asserts.

The defendant also challenges the number of hours billed by Mr. Merrell, in that he billed most of his time in two-hour blocks. (Docket No. 110 at 17.) The defendant likewise asserts that all three of the plaintiff's attorneys attended certain meetings, and that such time was unnecessarily duplicative. (Docket No. 110 at 17.) Finally, the defendant challenges Mr. Street's billing in that he "block billed" time, attributing large chunks of time to multiple activities, rather than specifying how much time was spent on individual activities, and that, on certain occasions, he billed more time for meetings with the defendant's attorneys than the defendant's attorneys billed for those same meetings. (Docket No. 110 at 18.)

Attorneys for a prevailing party are expected to exclude "excessive, redundant, or otherwise unnecessary" hours from their fee request. *Hensley*, 461 U.S. at 434. Where a bill

reflects a duplication of effort, excessive hours, or the somewhat disfavored practice of block billing, however, Sixth Circuit courts have deemed it appropriate to apply an across-the-board reduction to the number of hours billed. *See Auto Alliance Int'l, Inc. v. U.S. Customs Serv.*, 155 Fed. Appx. 226, 228 (6th Cir. 2005); *Randolph*, 2007 U.S. Dist. LEXIS 55020, at *11-*12. Given the issues raised by the defendant regarding the billing practices of Merrell and Street—who represented the vast majority of the time billed on the case—and evidence that the bills submitted may not have been "trimmed of the fat," it seems appropriate to apply an across-the-board reduction of ten percent to the number of hours billed by the plaintiff's attorneys to account for these inefficiencies. Such a reduction is consistent with the decisions of other courts in this circuit and is well within the court's discretion to ensure a reasonable fee.

*B. Upward Adjustment*

The product of a reasonable number of hours and a reasonable hourly rate usually will result in an attorney's fee that is reasonable under Section 1988. *Blum*, 465 U.S. at 897. In certain circumstances involving "exceptional success," an upward adjustment may be appropriate. *Hensley*, 461 U.S. at 435. Where a plaintiff seeks an upward adjustment to the lodestar, he or she bears the burden of proving that the upward adjustment is necessary to obtain a reasonable fee. *Blum*, 465 U.S. at 898.

Here, the plaintiff requests an upward adjustment of fifty to seventy-five percent to the lodestar calculation. He asserts that a number of factors enumerated by the Fifth Circuit in *Johnson* warrant this adjustment, citing specifically the novelty and difficulty of the legal questions involved, the preclusion of other employment, time limitations necessitated by the circumstances, and the undesirability of the case. (Docket No. 107 at 7-10.)

The plaintiff's whole-hearted reliance on *Johnson* is somewhat misplaced, however. As the Supreme Court has noted, many of the *Johnson* factors are often subsumed in the lodestar calculation. *See Hensley*, 465 U.S. at 434 n.9 (noting that a "district court also may consider other factors identified in *Johnson*, though it should note that many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate); *Blum*, 465 U.S. at 898-900 (finding that novelty of issues, complexity of litigation, quality of representation, and results obtained are reflected in a reasonable rate and do not usually justify upward adjustment to lodestar). Thus, the fact that this case may have required work on novel and difficult issues or may have required additional time because of linguistic and cultural barriers or the defendant's litigation tactics, will be reflected in the lodestar, as the lodestar compensates the attorneys for reasonable time expended on the case—for whatever reason—at a reasonable hourly rate. Likewise, in compensating attorneys for time spent on a case, the lodestar formula incorporates the fact that this time was not spent engaged in other employment. Finally, the undesirability of this case is subsumed in the very function of Section 1988 itself, in that the purpose of the statute is to provide compensation for attorneys in civil rights lawsuits and to encourage representation in such cases—and thus the reasonable fee, as determined by the lodestar calculation, usually can be understood to incorporate that factor as well.

Instead, the key question here is whether the lodestar calculated in this case does not represent a reasonable fee under the circumstances, such that an upward adjustment is required to provide "fair and reasonable compensation." *Blum*, 465 U.S. at 901; *see also Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005) ("[M]ultipliers, or fee enhancements to the lodestar calculation are permissible in some cases of exceptional success. The key issue is

whether an adjustment is necessary to the determination of a reasonable fee.") (quotation and citation omitted). This court is unconvinced that the lodestar is not reasonable compensation in this case, or that the degree of success here is so great as to warrant an upward adjustment. While the plaintiff prevailed on his Fourth Amendment claim and the jury found in favor of the plaintiff on most of the factual issues presented, it is also true that the jury awarded the plaintiff only nominal damages, declining to award either compensatory or punitive damages. Likewise, the fact that the plaintiff only proceeded to trial on a single claim mitigates any finding that the degree of success here was so exceptional as to necessitate an upward adjustment from the lodestar in order to obtain a reasonable fee.

As the standard lodestar calculation has resulted in a reasonable fee under the circumstances, an upward adjustment would be inappropriate.

*C. Downward Adjustment*

Whereas the plaintiff seeks an upward adjustment of the lodestar, the defendant argues with equal intensity that special circumstances justify the denial of attorney's fees altogether, or, at the very least, that the lodestar should be adjusted downward in light of the factors articulated in *Johnson*. (Docket No. 110 at 15, 18-19.) The defendant focuses on the "limited" degree of success obtained by the plaintiff, making a great deal of the facts that a number of the claims asserted by the plaintiff in the Complaint were dismissed at the summary judgment stage and that the jury awarded the plaintiff only nominal damages. (Docket No. 110 at 18-19.)

Downward adjustments to the lodestar are "applied only in rare and exceptional cases where specific evidence in the record requires it." *Isabel v. City of Memphis*, 404 F.3d 404, 416 (6th Cir. 2005). Additionally, in *Hensley*, the Supreme Court clarified that a plaintiff need not

prevail on all of his or her claims to be considered a prevailing party entitled to attorney's fees under Section 1988. 461 U.S. at 435. That court noted, however, that, in such cases, the reasonableness of a fee requires consideration of whether the claims on which the plaintiff failed were unrelated to those on which he or she succeeded and whether the plaintiff "achieved a level of success that [made] the hours reasonably expended a satisfactory basis for making a fee award." *Id.* at 434; *see also Wayne*, 36 F.3d at 532 (citing *Hensley*). Where a case involves "distinctly different claims for relief that are based on different facts and legal theories," an attorney's "work on one claim will be unrelated to his work on another claim" such that "work on a successful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.'" *Hensley*, 461 U.S. at 434-35. By contrast, where a case involves multiple claims based on "a common core of facts or . . . related legal theories," much of an attorney's time "will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id.* Additionally, where a plaintiff obtains "excellent results," the reasonable fee calculation of hours expended times hourly rate will generally be appropriate, but where a plaintiff has achieved "partial or limited success," the standard reasonable fee calculation "may be an excessive amount." *Id.* at 435-36. Ultimately, however, this determination is not subject to any precise formula and is within the district court's discretion in light of these considerations. *Id.* at 436-37.

Here, the plaintiff's claims revolved around a common core of facts in that they all stemmed from a traffic stop in 2005 that resulted in the seizure of the plaintiff's money, a seizure that the jury found to have taken place without the requisite probable cause. Although the plaintiff only succeeded on his Fourth Amendment claim, the work of his attorneys on his case

cannot easily be separated into work on the successful Fourth Amendment claim versus work on his other, unsuccessful claims, and the fact that the unsuccessful claims outnumbered the successful claims does not necessarily warrant a reduction in attorney's fees.[6] And though the degree of success attained here was not so exceptional as to warrant an upward adjustment, as discussed *supra* Section I.B., given that the plaintiff prevailed at trial and prevailed on most of the factual issues on which the jury made specific findings, and in light of the "strong presumption" that an attorney for a prevailing party is entitled to the lodestar fee, *see Adcock-Ladd*, 227 F.3d at 349, the downward reduction sought by the defendant is unwarranted.

In addition to seeking a downward adjustment to the lodestar, the defendant also asserts that special circumstances exist that warrant the denial of any attorney's fees at all. (Docket No. 110 at 15.) Generally, the award of attorney's fees under Section 1988 is mandatory in the absence of special circumstances, *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County*, 421 F.3d 417, 420 (6th Cir. 2005), and special circumstances "should not be easily found," *Cleveland v. Ibrahim*, 121 Fed. Appx. 88, 90 (6th Cir. 2005). The determination of whether special circumstances exist is made on a case-by-case basis, and the non-prevailing party bears the burden of making a "strong showing" that special circumstances exist. *Deja Vu*, 421 F.3d at 422. Here, the defendant makes no allegation of special circumstances that would justify such a dramatic departure other than to characterize, again, the plaintiff's success in this matter as "limited." (Docket No. 110 at 15.) As the degree of success obtained by the plaintiff

[6]The defendant characterizes the bulk of the plaintiff's claims as "frivolous." (Docket No. 110 at 18.) Although it is true that the plaintiff did not prevail on certain of his claims, the fact that those claims were unsuccessful does not necessarily render them "frivolous."



Case 3:05-cv-00971 Document 117 Filed 06/12/08 Page 10 of 14 PageID #: 1344

was insufficient to justify a downward adjustment in attorney's fees, it most certainly is insufficient to justify the wholesale denial of attorney's fees.

As the defendant has not demonstrated specific evidence or special circumstances that would justify the downward adjustment or denial of attorney's fees, the plaintiff will be awarded attorney's fees in the amount of $127,503, which represents the amount requested by the plaintiff, less an across-the-board reduction of ten percent as discussed *supra* Section I.A.

## II. Costs

In addition to seeking attorney's fees pursuant to Section 1988, the plaintiff seeks costs in the amount of $3,382.05 pursuant to the federal rules, which provide that costs "should be allowed to the prevailing party." Fed. R. Civ. P. 54(d); *see also* Local Rule 54.01. The defendant, however, argues that costs should be reduced or denied and challenges certain specific cost items charged by the plaintiff.

As with an award of attorney's fees under Section 1988, costs presumptively are awarded to a prevailing party under Rule 54, although a district court has discretion to deny or limit an award of costs in certain circumstances. *White & White Inc. v. Amer. Hosp. Supply Corp.*, 786 F.2d 728, 730 (6th Cir. 1986). Factors that may justify the denial or limitation of costs include where expenditures are "unnecessary or unreasonably large," where the prevailing party "should be penalized for unnecessarily prolonging trial or for injecting unmeritorious issues," "where the prevailing party's recovery is so insignificant that the judgment amounts to a victory for the defendant," or where the case is "close and difficult." *Id.* (quotations and citations omitted). Factors that are not relevant to a court's exercise of discretion include "the size of a successful litigant's recovery" and "the ability of the prevailing party to pay his or her costs." *Id.*

The defendant asserts that costs should be limited or denied because of the degree of success obtained by the plaintiff in this matter, which the defendant again characterizes as "limited," as only one claim proceeded to trial and as the jury awarded the plaintiff only nominal damages. (Docket No. 110 at 14-15.) As in the Section 1988 context, however, a party is considered to prevail even if he was only partially successful. *Andretti v. Borla Performance Indus.*, 426 F.3d 824, 835 (6th Cir. 2005). Additionally, as discussed *supra* Section I.C., the facts are that the plaintiff prevailed on the claim that went to trial and that the jury found for him on nearly every factual issue presented to it. This case was not so close or difficult as to justify deviating from the standard presumption that the prevailing party is entitled to costs under Rule 54.

In addition to his claim that costs should be denied or reduced, the defendant asserts that costs associated with the use of translation services during the trial should not be awarded, as those services were unnecessary and represented a "strategic[]" choice by the plaintiff's attorneys, when, the defendant claims, the plaintiff was fluent in speaking and understanding English. (Docket No. 110 at 14.) This court presided over the jury trial in this case and, although the plaintiff gave his testimony primarily in English, he certainly was not fluent. This court is not prepared to second-guess the decision of the plaintiff's attorneys that a translator was necessary for the plaintiff to communicate effectively with counsel or otherwise during the course of the trial, especially in a situation where the plaintiff was undoubtedly in unfamiliar territory and in which clear communication was vital. Additionally, it is worth noting that the time records submitted by the plaintiff's attorneys indicate that a number of their



Case 3:05-cv-00971 Document 117 Filed 06/12/08 Page 12 of 14 PageID #: 1346

communications with their client took place in Spanish, undermining the defendant's argument that the use of a translator was simply a gambit undertaken for strategic purposes at trial.

Finally, the defendant challenges a cost charge for photocopies of discovery materials that related to property seizures by the Rutherford County Sheriff's Department, which pertained to the plaintiff's equal protection claim. (Docket No. 110 at 15.) The defendant argues that, because this claim was dismissed at the summary judgment stage, the plaintiff's request for these particular costs should be denied. The plaintiff has not argued that this charge relates to any claims other than the equal protection claim, and it seems reasonable that where, as here, a cost item relates solely to an unsuccessful claim, it may be excluded from the costs awarded.

As such, the plaintiff will be awarded costs in the amount of $2,956.95, which represents the total amount of costs sought by the plaintiff, less $425.10 associated exclusively with discovery on the plaintiff's unsuccessful equal protection claim.

**III. Pre- and Post-Judgment Interest**

The plaintiff has acknowledged that a settlement entered into by the parties released the defendant from all claims other than the plaintiff's claims for attorney's fees and costs. (Docket No. 116 at 1.) Therefore, his motion will be denied to the extent that it sought pre- and post-judgment interest.

## CONCLUSION

For the reasons expressed herein, the plaintiff motion will be granted in part and denied in part, and the plaintiff will be awarded $127,503 in attorney's fees and $2,956.95 in costs.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge